UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                          PLAINTIFF


v.                                          CRIMINAL NO. 3:17-CR-78-DJH
                                                     *Filed Electronically*


DHAVAL JERAMBHAI DHOLARIA                                          DEFENDANT


### UNITED STATES' PRETRIAL MEMORANDUM

Pursuant to the Court's Order entered April 26, 2019 (R. 79), the United States respectfully submits this pretrial memorandum.

### I.      Statute Involved and Elements of the Offense

On June 7, 2017, a grand jury sitting in the Western District of Kentucky returned a six count indictment charging Dhaval Jerambhai Dholaria with

- one count of distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1),

- two counts of introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. § 331(a), 333(a)(2), and 352(f)(1),

- one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846,

- one count of conspiracy to introduce misbranded drugs into interstate commerce, in violation of 21 U.S.C. § 846, and

- one count of using a fictitious name to conduct an unlawful business, in violation of 18 U.S.C. § 1342.

<u>Distributing and Possessing with Intent to Distribute Controlled Substances (Count 1)</u>

The elements of distributing and possessing with intent to distribute a controlled substance, are: (1) the defendant knowingly delivered the substance outside the scope of professional practice and not for a legitimate medical purpose; (2) the defendant knew that the delivery was outside the scope of professional practice and not for a legitimate medical purpose; and (3) the defendant knew that it was some form of prohibited drug (Distribution) OR (1) the defendant knowingly possessed a controlled substance; (2) the defendant possessed it with the intent to deliver it to another person outside the scope of professional practice and not for a legitimate medical purpose; and (3) the defendant knew that the delivery would be outside the scope of professional practice and not for a legitimate medical purpose.

<u>Introducing Misbranded Drugs into Interstate Commerce (Counts 2-3)</u>

The elements of introducing misbranded drugs into interstate commerce are: (1) the defendant introduced or delivered for introduction into interstate commerce; (2) a drug that was misbranded; and (3) the defendant did so with intent to defraud or mislead.  A drug is "misbranded" under the Food, Drug and Cosmetic Act ("FD&C Act") if its labeling fails to bear adequate directions for us, or if it is a prescription drug that was not dispensed pursuant to a prescription of a practitioner licensed by law to administer such drug.  Adequate directions for use are those directions "under which the layman can use a drug safely and for the purposes of which it is intended." 21 C.F.R. § 201.5.[1]

---

[1] 21 C.F.R. § 201.5 further states:

> Directions for use may be inadequate because, among other reasons, of omission, in whole or in part, or incorrect specification of:
>
> (a) Statements of all conditions, purposes, or uses for which such drug is intended, including conditions, purposes, or uses for which it is prescribed, recommended, or suggested in its oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drug is commonly used; except

Courts have held that schemes to circumvent the requirements of the FD&C Act are not limited to schemes designed to defraud consumers, but extend to schemes designed to defraud the FDA. *United States v. Bradshaw*, 840 F.2d 871, 874 (11th Cir. 1988) (expressly finding that an illicit steroid distribution scheme amounted to fraud against the FDA).

Conspiracy to Distribute Controlled Substances (Count 4)

The elements of this conspiracy charge are: (1) on or about and between March 19, 2016 and March 24, 2016, there was an agreement between two or more persons to distribute or possess with intent to distribute Schedule IV controlled substances outside the scope of professional practice and not for a legitimate medical purpose, knowing that the distribution or possession with intent to distribute was outside the scope of professional practice and not for a legitimate medical purpose; (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

Conspiracy to Introduce Misbranded Drugs Into Interstate Commerce (Count 5)

The elements of this conspiracy charge are: (1) on or about and between March 19, 2016 and March 24, 2016, there was an agreement between two or more persons to introduce

---

that such statements shall not refer to conditions, uses, or purposes for which the drug can be safely used only under the supervision of a practitioner licensed by law and for which it is advertised solely to such practitioner.

(b) Quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions.

(c) Frequency of administration or application.

(d) Duration of administration or application.

(e) Time of administration or application (in relation to time of meals, time of onset of symptoms, or other time factors).

(f) Route or method of administration or application.

(g) Preparation for use, i.e., shaking, dilution, adjustment of temperature, or, other manipulation or process.

prescription drugs into interstate commerce with labeling that failed to bear adequate directions for use, which caused the drugs to be misbranded, with the intent to defraud or mislead as to a material matter; (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

Use of a Fictitious Name to Conduct an Unlawful Business (Count 6)

The elements of using a fictitious name to conduct an unlawful business are: (1) the defendant used or assumed, or requested to be addressed by, a fictitious, false, or assumed title, name, or address or name other than his own; (2) the defendant did so for the purpose of conducting, promoting, or carrying on an unlawful business; and (3) the defendant delivered or caused to be delivered by mail or by private or common carrier any matter or thing whatever for the purpose of executing the scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

## II.   Statement of Facts

On March 17, 2016, in response to an email solicitation, Steven Lamp went online and subsequently purchased 90 zolpidem (generic Ambien) tablets for $330.  Zolpidem is a Schedule IV controlled substance used to treat sleep problems.  As a Schedule IV controlled substance, zolpidem can only be obtained with a doctor's prescription. Mr. Lamp did not have a prescription, however, and in fact had never seen a doctor, and did not have any sleep problems.  The seller did not require Mr. Lamp to show a valid prescription, and Mr. Lamp placed his order and paid via PayPal.  A few days later, Mr. Lamp received a package in the mail.  The envelope listed the shipper as "Sam H" in Houston, Texas, and contained the 90 zolpidem tablets that Mr. Lamp had ordered.  The package did not contain any prescription information, nor did it contain adequate directions for use.

Here was evidence of three federal crimes: (1) distributing controlled substances without a license to do so, (2) shipping controlled substances with labeling that does not bear adequate directions for use, and (3) shipping controlled substances without a valid prescription. But Mr. Lamp is not a criminal; he is a Special Agent with the United States Food and Drug Administration, Office of Criminal Investigations. When he ordered the drugs that day, he was operating as an undercover officer.

Special Agent (SA) Lamp's next task was to identify the shipper. He noted that the package's postage had been paid through a Stamps.com account. Through a subpoena to Stamps.com, he determined that the Stamps.com account had been paid by a Comerica credit card, which SA Lamp traced to the defendant, Dhaval Dholaria. The credit card, in turn, was paid by checks drawn on a US Bank checking account associated with Dholaria.

SA Lamp, an agent with 20 years of experience working drug cases, suspected that he was not the only person who had ordered controlled substances from this supplier. He also suspected he was not the only person who had received misbranded drugs provided without a prescription.

SA Lamp contacted the Department of Homeland Security (DHS) to ask about other packages that may have been shipped to Dholaria. He found that between February 27, 2016 and April 1, 2016, Customs and Border Patrol (CBP) had seized twenty-four international packages, all of which contained misbranded drugs, and all of which were destined for various addresses in Texas associated with Dholaria.

The United States Postal Inspection Service (USPIS) also found evidence of wrongdoing. On March 21, 2016, a USPIS agent (working in conjunction with DHS) observed Dholaria drive from his home in Houston to a post office, where Dholaria dropped off 29 packages for delivery. On March 31, 2016, the USPIS agent observed Dholaria pick up four packages in the post office,

each of which contained purported controlled substances.  The agents confronted Dholaria as he was exiting the post office.  None of the packages Dholaria picked up had any prescription information authorizing him to possess the drugs, nor did these drugs have adequate directions for use.

Altogether, the inbound packages seized in this investigation contained an estimated 52,000 tablets of purported tramadol, 2,300 tablets of purported diazepam, 2,200 tablets of purported zolpidem, 1,200 tablets of purported clonazepam, and 1,500 tablets of purported carisoprodol.  Presumably, Dholaria planned to use these tablets (approximately 59,200—much more than a personal use amount) to fill additional illicit drug orders like SA Lamp's order.  All of the incoming packages were shipped from India.  Dholaria had them sent to five different addresses: his home, his P.O. Box, his old residence, and two former business addresses.  Dholaria also had them addressed to 10 different names, but never using his own name:  Juan S, Adri Del, David D, Jer Dho, Dave D, J Dav, Don Domingo, Dave Wasquez, John JP, and Dave Jer.

Altogether, the outbound packages seized in this investigation contained a total of 4,920 tablets of misbranded drugs.   On these packages, Dholaria never used his real name or address for the return address, instead using the alias "Sam H" and an address for a suite that was down the hall from the suite occupied by his actual business.  Laboratory analysis showed that some of the outgoing packages contained controlled substances consistent with their labeling, while others did not contain the controlled substance stated on their label.  None of the drugs was accompanied with a valid prescription or labeling with adequate directions for use.

SA Lamp submitted nineteen of the packages for forensic testing.  Six of the packages did not contain the drug their label stated:  two inbound parcels were labeled as containing zolpidem but actually contained chlorpheniramine, one inbound parcel was labeled as containing

clonazepam but actually contained clozapine, one inbound parcel labeled as containing diazepam but actually contained clozapine and chlorpheniramine, one outbound parcel was labeled as containing lorazepam but actually contained clozapine, and one outbound parcel were labeled as containing zolpidem but actually contained chlorpheniramine.  All of remaining packages tested contained controlled substances consistent with their labeling.

Dholaria's email account provides additional evidence of his crimes.  Dholaria used his email account for normal, everyday activities.  He used it to order pizza, pay traffic tickets, and pay his energy bill.  He used it both to navigate his divorce and child support and to meet new women.  He used it to sell his flood-damaged vehicle after hurricane Harvey.  Dholaria also used his email account to conduct the criminal activity at issue in this case.

Dholaria used the email to set up deals, as in a January 5, 2016, email he received from Amit Kudke stating, "Hi Dhaval, Below is the medicine list Sachin wants to send to USA through your Merchant [account]," attaching a spreadsheet listing numerous controlled substances and non-controlled substances.  Dholaria responds, "Ok . . .Done Deal."  Dholaria used the email to advertise his services, stating in a January 27, 2016 email, "i have leads very good," "plus i have source of supply," and "plus i can be your shipper." Dholaria used the email to direct his co-conspirators how to keep their operation covert, stating in a January 27, 2016 email, "must not write medicine, capsule, or any words in items or invoices or viagra or anything," warning them that "if you do it merchant will be blocked for 90 days."  Instead, he told his co-conspirators to "keep using item code DLIE 3223 kind of things service and support."  The next day, Dholaria sent his co-conspirators an example of how his merchant account had been blocked due to a "pattern of transactions associated with high-risk activity."

### III.     Substantive Issues of Law

There are no outstanding substantive issues of law (i.e. defects in the indictment, *Miranda* concerns, entrapment defenses, or illegal searches) awaiting resolution at this time.

### IV.     Evidentiary Issues

The United States anticipates several evidentiary issues may come up at trial.

A. Jencks Act Materials

As the United States continues to review evidence and interview witnesses, attorneys for the United States will produce any additional Jencks Act material of which we become aware. Rule 26.2(a) of the Federal Rules of Criminal Procedure provides that the defendants make reciprocal disclosures of witness statements upon request by the United States. By rule, neither the United States nor the defendants are required to produce witness statements until after the witness' testimony on direct examination.   In the interest of expediting trial proceedings, both parties have agreed to produce their witnesses' statements prior to trial.

B. Grand Jury Testimony

The United States has produced transcripts of Grand Jury testimony for any witnesses it intends to call at trial or that may contain exculpatory information pursuant court orders authorizing disclosure. If the United States determines that it will call additional witnesses at trial, additional transcripts may be disclosed.

C. Stipulations of Fact

The United States and Dholaria are negotiating stipulations which should dramatically shorten the anticipated length of trial.  Amongst other things, the United States and Dholaria will stipulate on chain of custody, lab results of seized drugs, that neither Dholaria nor any of his

associates were licensed pharmacists or authorized wholesale distributors of controlled substances, that neither Dholaria nor any of his associates ever obtained a modified DEA registration authorizing them to operate as an online pharmacy, and Dholaria's various personal and business addresses.  The parties will file a final list of stipulations by Friday, July 12, 2019.

D.  Expert Testimony

The United States intends to present expert testimony from Dr. Arthur Simone, Senior Medical Advisor for the Food and Drug Administration.  Dr. Simone will testify, amongst other things, that the drugs contained in the packages seized in this case were prescription drugs which were unapproved new drugs, and the dangers and risks of the drugs that were seized.

E.  On or About

The charged conspiracies (Counts 4 and 5) relate to illegal shipments "[o]n or about and between March 19, 2016 and March 24, 2016."   The United States plans to present evidence of packages that were seized between February 22, 2016 and April 1, 2016, as these seizures occurred "on or about" the charged dates.  *See, e.g., United States v. Manning*, 142 F.3d 336, 338-39 (6th Cir. 1998) (one month before the charged date is "on or about"); *United States v. Arnold*, 890 F.2d 825, 829 (6th Cir. 1989) (same).

F.  Background Evidence

The charged conspiracies (Counts 4 and 5) relate to illegal shipments of zolpidem and tramadol.  Some of the packages seized in this investigation purported to contain other drugs (e.g. carisoprodol, lorazepam, clonazepam, and diazepam), and some of the packages that purported to contain zolpidem in fact contained chlorpheniramine.

Because these other packages were seized along with the drugs charged in the indictment, they constitute related and intrinsic (though uncharged) acts of the conspiracy, and are thus admissible as *res gestae* evidence.  "Proper background evidence has a causal, temporal or spatial connection with the charged offense."  *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir.2000). It includes evidence that is "inextricably intertwined with the charged offense" as it "arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."  *Id.*

This evidence does *not* implicate Rule 404(b):

> When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic."  "Intrinsic" acts, on the other hand, are those that are part of a single criminal episode. Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity.

*United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995).

G.  Business Records

The United States plans to introduce a number of business records.  Business records made and kept in the regular course of business are admissible pursuant to Rule 803(6) of the Federal Rules of Evidence.  The United States has provided defense counsel with a copy of its Exhibit List, and the parties will work to resolve objections (if any) prior to trial.

H.  Improper Arguments

Courts have "categorically reject[ed] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997).  Embracing that principle, the Sixth Circuit has emphasized that "although jurors may indeed have the power to

ignore the law, their duty is to apply the law as interpreted by the court and they should be so instructed." *United States v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983).

While the United States has not received any information that the defense in this case intends to make any impermissible arguments, the government wishes to flag for the Court several arguments in particular that are common, and to which the government will object if offered.

As the Sixth Circuit jury instructions implicitly recognize, any reference to a defendant's punishment as a reason for acquittal is improper and should not be permitted. See SIXTH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS § 8.05 (2017) ("Deciding what the punishment should be is my job, not yours. It would violate your oaths as jurors to even consider the possible punishment in deciding your verdict."). It would also be improper for the defense to argue that a felony conviction would result in collateral consequences (immigration or otherwise) or a possible prison sentence for the Defendant. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion"); *United States v. Flowers*, 712 Fed. Appx. 492, 502 (6th Cir. 2017) (upholding lower court's decision to limit defendant's cross examination in order to avoid discussion of possible punishment before the jury).

### V.      Trial Problems

At this time the United States is not aware of any likely substantive trial problems.

### VI.      Jury Instructions

The United States will file its proposed jury instructions separately but simultaneously with this memorandum.

## VII.    Proposed Voir Dire

1. I'm going to read a list of names that you may hear over the course of this trial.  Some of them are witnesses that you will hear testify, either for the prosecution or defense; some of them are people who you will hear about but will not be here.  [Read list compiled by parties.]

2. Please list any occupation you have had that required a state or federal license to operate.

3. Have you or a close friend or family member ever held a job in which you were responsible for compliance, safety training or enforcing safety rules and regulations?

4. Have you or a close friend or family member ever been employed in the field of health care, including in a physician's office or pharmacy?

5. Are you or a close friend or family member associated with or part of the medical or pharmacy profession?

6. Do you believe that it is appropriate for the federal government to have regulations concerning the distribution by physicians of controlled substances, including pharmaceutical drugs?

7. Is there anyone who believes that the federal government should not regulate controlled substances? What about prescription drugs?

8. Have you heard, read, or seen anything, including newspaper or magazine articles and television programs, discussing prescriptions for drugs or controlled substances being issued over the Internet to patients?

9. Have you or a close friend or family member ever obtained prescription medication through the Internet?  If yes, please describe your experience.

10. This case involves persons ordering drugs over the Internet in circumstances where the individuals ordered drugs without seeing a physician or without submitting a prescription. Have any of you ever done this or something similar? Have any of your close friends or family members?

11. Please describe any negative experiences you, a family member, or close friend has ever had involving a prescription drug.

12. This case involves distribution of prescription drugs, including zolpidem (generic for Ambien) and tramadol.  Do you have any knowledge about or experience with these specific drugs?

13. Evidence will be presented at trial that was gathered by agents who were acting in an undercover capacity. In that capacity, the agents pretended to be people they are not. Do you have any concern about the government's use of undercover agents that would affect your ability to give that evidence the same consideration you would give the other evidence in the case?

14. Have you, or has any close friend or family member, had contact with people who sell or are otherwise involved with controlled substances?

15. Have you belonged to any organizations concerned with criminal law, drug enforcement, the criminal justice system, or victim's rights?

16. Have you ever been a party, witness, or juror in a lawsuit? If yes, when was it and what type of case was it? What role did you have in the case?

17. Have you or a close friend or family member ever been accused, arrested, or charged with a criminal offense, other than a minor traffic violation?

18. Would you be able to consider the testimony of a witness in law enforcement in the same way that you would consider the testimony of any other witness?

19. Have you or a close friend or family member ever had an experience with law enforcement that would affect your ability to be fair and impartial in this case?

20. Do you have any opinions about the criminal justice system that would affect your ability to be fair and impartial?

21. Have you or any member of your family made a claim against the United States government, or had a dispute or contested matter with any federal agency?

22. Does the fact that the charges in this case involve allegations of drug offenses affect your ability to fairly and impartially judge the evidence in this case?

23. Is there anyone who believes that an individual has the right to decide which laws he or she will follow and which laws he or she doesn't have to follow? Would you be able to follow the law as the judge defines it for you in this trial, even if you disagreed with it?

24. Is there anyone who believes that if a person thinks that a law is wrong, he or she doesn't have to follow that law?

25. Is there anyone who believes that if a person thinks that something shouldn't be illegal, he or she shouldn't be convicted of a crime for doing that thing?

26. You should not speculate about the possibility of punishment for the defendant. While you might naturally wonder what might happen as a result of your verdict, will you be able to decide the factual issues independent of such feelings?

27. If the evidence presented at trial convinced you beyond a reasonable doubt that the defendant committed the offenses charged in the indictment, is there any reason that you might hesitate to return a verdict of guilty?

28.  Do you have any moral, religious, or ethical beliefs that would make it difficult for you to sit as a juror in this case?

29. Do you have any condition, medical or otherwise, that would make it difficult for you to sit for several hours at a time?

30. Do you have any difficulties regarding your eyesight or hearing that might prevent you from viewing evidence, observing or hearing witnesses, lawyers or the judge?

31. Is there any matter about you potential jury service on this case that you would prefer to discuss privately with the judge?

## VIII.   Statement of the Case

The United States alleges that in March 2016, Dhaval Dholaria was distributing prescription drugs in violation of the Controlled Substances Act and the Food Drug and Cosmetic Act.  In a six-count Indictment, Dholaria has been charged with conspiracy and other illegal acts related to these violations of federal law.

The first three counts relate to Dholaria's March 2016 shipment of zolpidem tartrate (generic for Ambien) from Texas to Kentucky.  The United States alleges criminal conduct in that (1) Dholaria was not licensed to ship controlled substances, (2) the zolpidem was misbranded, in that its labeling failed to bear adequate directions for use, and (3) the zolpidem was misbranded, in that it was dispensed without a valid prescription.

Counts 4 and 5 address related conduct, alleging that Dholaria conspired with others to (1) distribute controlled substances without a license, and (2) distribute controlled substances that were misbranded, in that the labeling failed to bear adequate directions for use.

Count 6 alleges that Dholaria used a false name ("Sam H") for the purpose of conducting his illegal business of distributing controlled substances via the United States Postal Service without a license and introducing misbranded drugs in interstate commerce.

### IX. Conclusion

As noted above, there remain a number of matters to be resolved prior to trial.


Respectfully submitted,

RUSSELL M. COLEMAN
United States Attorney


/s/ David Weiser
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky  40202
(502) 625-7068
david.weiser@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to J. Clark Baird, counsel for defendant.

/s/ David Weiser
Assistant U.S. Attorney