**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
*Filed Electronically*

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**v.**                                                          **CASE NO: 3:17-CR-00078**

**DHAVAL JERAMBHAI DHOLARIA**                                                         **DEFENDANT**

TRIAL MEMORANDUM

COMES NOW the Defendant, by and through Counsel, and submits this pretrial memorandum:

### Statute Involved and Elements of the Offense

On June 7, 2017, a grand jury sitting in the Western District of Kentucky returned a six count indictment charging Dhaval Jerambhai Dholaria with:

- one count of distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1),
- two counts of introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. § 331(a), 333(a)(2), and 352(f)(1),
- one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846,
- one count of conspiracy to introduce misbranded drugs into interstate commerce, in violation of 21 U.S.C. § 846, and
- one count of using a fictitious name to conduct an unlawful business, in violation of 18 U.S.C. § 1342.

<u>Distributing and Possessing with Intent to Distribute Controlled Substances (Count 1)</u>

The elements of distributing and possessing with intent to distribute a controlled substance, are: (1) the defendant knowingly delivered the substance outside the scope of professional practice and not for a legitimate medical purpose; (2) the defendant knew that the delivery was outside the scope of professional practice and not for a legitimate medical purpose; and (3) the defendant knew that it was some form of prohibited drug (Distribution) OR (1) the defendant knowingly possessed a controlled substance; (2) the defendant possessed it with the intent to deliver it to another person outside the scope of professional practice and not for a legitimate medical purpose; and (3) the defendant knew that the delivery would be outside the scope of professional practice and not for a legitimate medical purpose.

### Introducing Misbranded Drugs into Interstate Commerce (Counts 2-3)

The elements of introducing misbranded drugs into interstate commerce are: (1) the defendant introduced or delivered for introduction into interstate commerce; (2) a drug that was misbranded; and (3) the defendant did so with intent to defraud or mislead. A drug is "misbranded" under the Food, Drug and Cosmetic Act ("FD&C Act") if its labeling fails to bear adequate directions for us, or if it is a prescription drug that was not dispensed pursuant to a prescription of a practitioner licensed by law to administer such drug. Adequate directions for use are those directions "under which the layman can use a drug safely and for the purposes of which it is intended." 21 C.F.R. § 201.5.1

Courts have held that schemes to circumvent the requirements of the FD&C Act are not limited to schemes designed to defraud consumers, but extend to schemes designed to defraud the FDA. United States v. Bradshaw, 840 F.2d 871, 874 (11th Cir. 1988) (expressly finding that an illicit steroid distribution scheme amounted to fraud against the FDA).

### Conspiracy to Distribute Controlled Substances (Count 4)

The elements of this conspiracy charge are: (1) on or about and between March 19, 2016 and March 24, 2016, there was an agreement between two or more persons to distribute or possess with intent to distribute Schedule IV controlled substances outside the scope of professional practice and not for a legitimate medical purpose, knowing that the distribution or possession with intent to distribute was outside the scope of professional practice and not for a legitimate medical purpose; (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

### Conspiracy to Introduce Misbranded Drugs Into Interstate Commerce (Count 5)

The elements of this conspiracy charge are: (1) on or about and between March 19, 2016 and March 24, 2016, there was an agreement between two or more persons to introduce prescription drugs into interstate commerce with labeling that failed to bear adequate directions for use, which caused the drugs to be misbranded, with the intent to defraud or mislead as to a material matter; (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

### Use of a Fictitious Name to Conduct an Unlawful Business (Count 6)

The elements of using a fictitious name to conduct an unlawful business are: (1) the defendant used or assumed, or requested to be addressed by, a fictitious, false, or assumed title, name, or address or name other than his own; (2) the defendant did so for the purpose of conducting, promoting, or carrying on an unlawful business; and (3) the defendant delivered or caused to be delivered by mail or by private or common carrier any matter or thing whatever for the purpose of executing the scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

## Statement of Facts

On or about March 17, 2016, FDA Special Agent (SA) Steven Lamp went online and subsequently purchased 90 zolpidem (generic Ambien) tablets for $330 via Paypal without a prescription. Zolpidem is a Schedule IV controlled substance used to treat sleep problems. As a Schedule IV controlled substance, zolpidem can only be obtained with a doctor's prescription. SA Lamp received a package in the mail containing 90 zolpidem tablets. The envelope listed the shipper as "Sam H" in Houston, Texas, but did not provide a return address. The package did not contain any prescription information, nor did it contain adequate directions for use.

The package's postage had been paid through a Stamps.com account. Via subpoena, SA Lamp found the Stamps.com account had been paid by a Comerica credit card, which SA Lamp traced to the defendant, Dhaval Dholaria. The credit card account had been paid by checks drawn on a US Bank checking account associated with Dholaria.

SA Lamp contacted the Department of Homeland Security (DHS) to ask about other packages that may have been shipped to Dholaria. DHS claimed that between February 27, 2016 and April 1, 2016, Customs and Border Patrol (CBP) had seized twenty-four international packages, all of which contained misbranded drugs, and all of which were destined for various addresses in Texas allegedly associated with Dholaria. These packages were not all addressed to the Defendant Dhaval Dholaria.

On March 21, 2016, a USPIS agent (working in conjunction with DHS) observed Dholaria drive from his home in Houston to a post office, where Dholaria dropped off 29 packages for delivery. On March 31, 2016, the USPIS agent observed Dholaria pick up four packages in the post office, each of which contained purported controlled substances. Dholaria had not opened any of these packages, nor was there any proof indicating he was aware of the contents of these packages.

The agents confronted Dholaria as he was exiting the post office. Dholaria did not make any incriminating statements to the agents. None of the unopened packages Dholaria picked up had any prescription information authorizing him to possess the drugs, nor did these drugs have adequate directions for use.

Inbound packages which never reached the Defendant, that were seized contained an estimated 52,000 tablets of purported tramadol, 2,300 tablets of purported diazepam, 2,200 tablets of purported zolpidem, 1,200 tablets of purported clonazepam, and 1,500 tablets of purported carisoprodol. All of the incoming packages were shipped from India to multiple addresses. These packages were shipped to 10 different names none of which were the name of the Defendant: Juan S, Adri Del, David D, Jer Dho, Dave D, J Dav, Don Domingo, Dave Wasquez, John JP, and Dave Jer.

Altogether, the seized outbound packages, which did not have the Defendant's name or return address listed, contained a total of 4,920 tablets of alleged misbranded drugs. Laboratory analysis showed that some of the outgoing packages contained controlled substances consistent with their labeling, while others did not contain the controlled substance stated on their label.

None of the drugs was accompanied with a valid prescription or labeling with adequate directions for use.

SA Lamp submitted nineteen of the packages for forensic testing. Six of the packages did not contain the drug their label stated. Two inbound parcels were labeled as containing zolpidem but actually contained chlorpheniramine, which is an over-the-counter antihistamine. One inbound parcel was labeled as containing clonazepam but actually contained clozapine, one inbound parcel labeled as containing diazepam but actually contained clozapine and chlorpheniramine, one outbound parcel was labeled as containing lorazepam but actually contained clozapine, and one outbound parcel were labeled as containing zolpidem but actually contained chlorpheniramine. The remaining packages tested contained controlled substances consistent with their labeling.

## Issues of Substantive Law

There is the substantive issue of venue herein.

In Count One of the Indictment, the Defendant is charged with knowingly and intentionally possessing a controlled substance with the intent to distribute and said possession occurred within the Western District of Kentucky between March 19th, 2016 and March 23rd, 2016.

In Counts Two and Three of the Indictment, the Defendant is charged with introducing into interstate commerce, with the intent to defraud, a misbranded drug (zolpidem tartrate) that was shipped "from Texas to Kentucky" between March 19th, 2016 and March 23rd, 2016.

In Count Four of the Indictment, is between March 19th, 2016 and March 24th, 2016, the Defendant is charged with conspiring to knowingly and intentionally possess with the intent to distribute and distributed Schedule IV controlled substances (a mixture containing zolpidem tartrate and a mixture containing tramadol), all within the Western District of Kentucky.

Count Five of the Indictment that charges the Defendant with conspiracy to introduce misbranded drugs into interstate commerce, such that between March 19th, 2016 and March 24th, 2016, in the Western District of Kentucky, the Defendant and an unindicted co-conspirator conspired to introduce misbranded drugs.

In Count Six of the Indictment, the Defendant is charged with Use of a Fictitious Name to Conduct an Unlawful Business that on or about March 9th, 2016 and March 31, 2016, in the Western District of Kentucky, the Defendant used and assumed and requested to be addressed by a name other than his own name for the purpose of conducting, promoting and carrying on an unlawful business, by means of the Postal Service, that the Defendant "created and used a stamps.com shipping account, registered in the name of "Sam H" for the purpose of illegally distributing controlled substances and introducing misbranded drugs into interstate commerce.

### A. CRIMINAL DEFENDANT HAS A CONSTITUTIONALLY PROTECTED RIGHT TO TRIAL IN A DISTRICT WITH PROPER VENUE

The right of a criminal defendant to be charged in the proper venue is both statutory and constitutional in nature. A criminal defendant has a Sixth Amendment right to be tried in a "district wherein the crime shall have been committed." *United States v. Cabrales*, 524 U.S. 1, 6 (1998); *see also United States v. Baxter*, 884 F.2d 734, 736 (3d Cir.1989) ("[p]roper venue in criminal trials is more than just a procedural requirement; it is a safeguard guaranteed twice by the United States Constitution itself."); *see also United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir.1987) ("The venue provisions of the Constitution are important safeguards, protecting an accused from unfairness and hardship in defending against prosecution by the federal government."); see also *U.S. Const. Art. iii, § 2, cl. 3*. Indeed the Federal Rules of Criminal Procedure indoctrinate these constitutional protections: "prosecution shall be had in a district in which the offense was committed". *Fed. R. Crim. P. 18.* The government has the burden of proving that venue is proper for each count of the indictment. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989); *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005).

Courts must dismiss for lack of venue if the place of the wrong ("*locus delicti*") of a charged offense did not take place in the district in which the defendant is charged. *Cabrales*, 524 U.S. at 5-6. The *locus delicti* is "determined from the nature of the crime alleged and the location of the act or acts constituting it,". *Cabrales* at 6-7 (emphasis added) (quoting *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946)) which requires courts to focus on the "essential conduct elements" of the charged offense; *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999) (emphasis added); *Ramirez*, 420 F.3d at 144 (distinguishing between an "essential element" and an essential "conduct element," and holding that proper venue could only be established by the occurrence of an essential "conduct element" in the district).

Although certain crimes are considered continuing offenses (i.e., "the acts constituting the crime and the nature of the crime charged implicate more than one location") so that venue is properly laid in any of the districts where an essential conduct element of the crime took place, even continuing offenses do not create venue in any district having only a tangential relationship with the offense. *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985). Instead, the Second Circuit requires that the alleged misconduct have "substantial contacts" with the charged district to ensure that the extension of venue has not exceeded constitutional boundaries. *See United States v. Saavedra*, 223 F.3d 85, 92-94 (2d Cir. 2000); *United States v. Brennan*, 183 F.3d 139, 149-50 (2d Cir. 1999); *Reed*, 773 F.2d at 481-82.

B.  **THERE IS NO VENUE IN THIS DISTRICT FOR KNOWINGLY POSSESSING WITH THE INTENT TO DISTRIBUTE CONTROLLED SUBSTANCES (COUNT 1).**

The essential elements of *21 U.S.C. 841(a)* require a finding that the defendant ""it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance".

The essential conduct elements here are "distributed" or "possessed". *Rodriguez-Moreno*, 526 U.S. at 280. It should be undeniable that the Defendant did not possess any controlled substances within this District as the indictment does not allege the Defendant ever physically entered this District. Therefore the United States must be proceeding under the "distributed" element.

*21 U.S.C. 841(a)* should not be defined as a continuing offense under *18 U.S.C. 3237*. This crime does not involve an element of "the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States". *18 U.S.C. 3237*. Therefore we look to the essential conduct elements to determine proper venue. *Rodriguez-Moreno* at 280.

Here the Defendant allegedly distributed controlled substances from the Southern District of Texas. The United States alleges that in Texas the Defendant received orders for controlled substances. The United States alleges that inside the Southern District of Texas the Defendant possessed controlled substances with the intent to distribute. The United States alleges that inside Texas the Defendant shipped controlled substances for distribution. *See Indictment.* The United States does not allege that the Defendant was physically present within this District and distributed controlled substances. Therefore the inescapable conclusion is that the Defendant's alleged distribution of controlled substances occurred within the Southern District of Texas. This analysis would meet the constitutional requirements for venue.

When venue is an issue and counsel is arguing the government has not met its burden of showing that agreement or overt act took place in the charging district, an instruction must be given to instruct the jurors to find the defendant not guilty.

The Fifth and Seventh Circuit have held that venue is not an issue unless it is actually disputed at trial. *See U.S. v. Winship, 724 F.2d 1116, 1124-25 (5th Cir. 1984); U.S. v. Massa, 686 F.2d 526, 530 (7th Cir. 1982).* The Tenth Circuit has held that "failure to instruct on venue, when requested, is reversible error unless it is beyond a reasonable doubt that the jury's guilty verdict on the charged offense necessarily incorporates a finding of proper venue." *U.S. v. Miller, 111 F.3d 747, 751 (10th Cir. 1997).*

C.  **THERE IS NO VENUE IN THIS DISTRICT FOR THE MISBRANDED DRUG CHARGES (COUNTS 2-3)**

The language of *21 U.S.C. 331(a)* states "the defendant introduced or delivered for introduction into interstate commerce any drug that was misbranded." *21 U.S.C. 331(a).* In this statute the "essential conduct element" is 'introduced or delivered for introduction into interstate

commerce'.  *See Rodriguez-Moreno*, 526 U.S. at 280; *see also United States v. Cabrales*, 524 U.S. 1 (1998).  Focusing on the plain language of the statute the words "introduced" and "introduction" are the verbs that establish the conduct that a defendant must engage in to violate this statute; simple possession of misbranded drugs would not constitute a violation of this statute without those misbranded drugs being 'introduced' into interstate commerce.  The Oxford Dictionary online defines the word 'introduce' as "insert or bring into something" or "occur at the start of; open.  *See*

*http://www.oxforddictionaries.com/us/definition/american_english/introduce?q=introduce*.

Here the Defendant allegedly inserted the misbranded drugs into interstate commerce while in the Southern District of Texas.  The United States has admitted that the Defendant introduced these items into interstate commerce from the Southern District of Texas.  *See Indictment.*  The 'start of' this alleged conduct occurred in the Southern District of Texas.  The conduct elements of Section 331(a) were clearly committed outside this District.  Under the *locus delecti* analysis the location of the acts constituting this crime, i.e. the essential conduct elements of the charged offense, occurred within the Southern District of Texas.  *See Rodriguez-Moreno* at 280.  Proper venue can only be established by the occurrence of an essential conduct element within the district.  *See U.S. v. Ramirez,* 420 F.3d 134, 144 (2d Cir. 2005).

Even if this charge is defined as a continuing offense under *18 U.S.C. § 3237(a)* to meet constitutional strictures, courts must limit venue under this provision to those jurisdictions where the defendant committed the "essential conduct elements" of the charged crime.  *Rodriguez-Moreno,* 526 U.S. at 280; *see also United States v. Cabrales*, 524 U.S. 1 (1998).  Even continuing offenses do not create venue in any district having only tangential relationship with the offense.  *U.S. v. Reed,* 773 F.2d 477, 480 (2d Cir. 1985).  This would violate the constitutional limitations on venue.

The Defendant did not introduce any item into interstate commerce from within this District.  Therefore venue here is improper.  The proper venue for this charge would be the Southern District of Texas.

### D. THERE IS NO VENUE IN THIS DISTRICT ON THE CONSPIRACY COUNTS (COUNTS FOUR AND FIVE)

The crime here is the conspiracy itself.  None of the elements of the conspiracy counts (criminal agreement and the joining of the conspiracy) occurred here within this district.

The issue is that the packages that the Defendant allegedly shipped to the Western District of Kentucky were shipped from Houston, Texas which is not in the Western District of Kentucky.  The United States alleges that the Defendant conspired to possess drugs with the intent to distribute.  But the conspiring to possess these drugs would have occurred in the Southern District of Texas.  The actual possession of these drugs would have occurred in the Middle District of Texas.  The crime is not the distribution itself, but the conspiracy.

The elements of this conspiracy charge in Count Four are: (1) on or about and between March 19, 2016 and March 24, 2016, there was an agreement between two or more persons to introduce prescription drugs into interstate commerce with labeling that failed to bear adequate

directions for use, which caused the drugs to be misbranded, with the intent to defraud or mislead as to a material matter; (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose. The United States has not named the other individuals in this conspiracy and the law allows the use of unindicted co-conspirators to form the basis of a conspiracy indictment. But here the United States has neither indicted nor named a conspirator in the Western District of Kentucky who conspired with the Defendant between March 19 and March 24th, 2016. There is no proof that prior to this Indictment that the Defendant ever traveled to this District. So the alleged agreement and the alleged subsequent joining of the agreement by the Defendant did not and could not have occurred within the Western District of Kentucky.

The same argument applies to the conspiracy charge of Count Five. The elements of this conspiracy charge are: (1) on or about and between March 19, 2016 and March 24, 2016, there was an agreement between two or more persons to introduce prescription drugs into interstate commerce with labeling that failed to bear adequate directions for use, which caused the drugs to be misbranded, with the intent to defraud or mislead as to a material matter; (2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The United States has not shown that the Defendant or the unindicted co-conspirator were within the Western District of Kentucky when the alleged agreement was reached. Nor has the United States shown any connection between the alleged joining of the conspiracy by the Defendant and the Western District of Kentucky.

      E.      **THERE IS NO VENUE IN THIS DISTRICT FOR USE OF A FICTITIOUS NAME TO CONDUCT AN UNLAWFUL BUSINESS (COUNT 6)**

The elements of using a fictitious name to conduct an unlawful business are: (1) the defendant used or assumed, or requested to be addressed by, a fictitious, false, or assumed title, name, or address or name other than his own; (2) the defendant did so for the purpose of conducting, promoting, or carrying on an unlawful business; and (3) the defendant delivered or caused to be delivered by mail or by private or common carrier any matter or thing whatever for the purpose of executing the scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises. Here the United States cannot show that the Defendant's use or assumption of the fictitious/false/assumed title, name or address occurred within the Western District of Kentucky. The United States cannot show that the Defendant created the Stamps.com account in this District. The use of the Stamps.com account occurs when the software is used to print off postage for a package to be shipped via the U.S. Postal Service. The United States has admitted in the indictment that all the packages were shipped from Houston. The packaging labels, under the government's own theory, would have been printed off in Texas.

The United States cannot show that the Defendant engaged in said use or assumption of a fictitious name within the Western District of Kentucky between March 9th and March 31st, 2016. The mere alleged delivery of drugs to this District is not sufficient to establish venue for this count in this District. The delivery is only one element of the offense and the factfinder must also find the other elements (the defendant used or assumed, or requested to be addressed by, a fictitious, false, or assumed title, name, or address or name other than his own; the

defendant did so for the purpose of conducting, promoting, or carrying on an unlawful business). These first two elements are joined to that third "delivery" element by an "and"; in other word the factfinder must find all three elements of the offense in order to convict. Thus all three elements are the "essential conduct" and all three must occur within the proper venue.

### Evidentiary Issues

The parties are stipulating to several facts on multiple issues which should reduce the length of the trial.

The United States has indicated it plans to introduce emails that are allegedly from the Defendant's email accounts. The United States has provided the defense with an updated exhibit list on today, July 8th, 2019. Some of these emails allegedly sent by the Defendant contain possible sexist statements about women of a derogatory nature. As the Court is aware, thousands of emails were obtained by the government thru the taint team. The United States should not be allowed to introduce emails that are substantially more prejudicial than probative under *FRE 403*. This type of evidence has a substantial risk of prejudicing the jury. Further the probative value of such derogatory emails is minimal in light of the huge number of emails the United States possesses that provide the same evidence on the same issues, but without the prejudicial component. The defense has not been able to review all of the exhibits in the United States' new exhibit list, therefore this issue may be moot if the government does not intend to introduce these prejudicial emails.

### Trial Problems

The defense is not aware of any trial problems.

### Jury Instructions

The Defendant requests the following Sixth Circuit Pattern Jury Instructions:

1.03 PRESUMPTION OF INNOCENCE, BURDEN OF PROOF, REASONABLE DOUBT

(1) As you know, the defendant has pleaded not guilty to the crime charged in the indictment. The indictment is not any evidence at all of guilt. It is just the formal way that the government tells the defendant what crime he is accused of committing. It does not even raise any suspicion of guilt.

(2) Instead, the defendant starts the trial with a clean slate, with no evidence at all against him, and the law presumes that he is innocent. This presumption of innocence stays with him unless the government presents evidence here in court that overcomes the presumption, and convinces you beyond a reasonable doubt that he is guilty.

(3) This means that the defendant has no obligation to present any evidence at all, or to prove to you in any way that he is innocent. It is up to the government to prove that he is guilty, and this burden stays on the government from start to finish. You must find the defendant not guilty unless the government convinces you beyond a reasonable doubt that he is guilty.

(4) The government must prove every element of the crime charged beyond a reasonable doubt. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt. Possible doubts or doubts based purely on speculation are not reasonable doubts. A reasonable doubt is a doubt based on reason and common sense. It may arise from the evidence, the lack of evidence, or the nature of the evidence.

(5) Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives. If you are convinced that the government has proved the defendant guilty beyond a reasonable doubt, say so by returning a guilty verdict. If you are not convinced, say so by returning a not guilty verdict.

### 1.04 EVIDENCE DEFINED

(1) You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

(2) The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; [the stipulations that the lawyers agreed to]; [and the facts that I have judicially noticed].

(3) Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

(4) During the trial I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

(5) Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 3.04 OVERT ACTS (18 U.S.C. § 371)

(1) The third element that the government must prove is that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

(2) The indictment lists overt acts. The government does not have to prove that all these acts were committed, or that any of these acts were themselves illegal.

(3) But the government must prove that at least one of these acts was committed by a member of the conspiracy, and that it was committed for the purpose of advancing or helping the conspiracy. This is essential.

[(4) One more thing about overt acts. There is a limit on how much time the government has to obtain an indictment. This is called the statute of limitations. For you to return a guilty verdict on the conspiracy charge, the government must convince you beyond a reasonable doubt that at least one overt act was committed for the purpose of advancing or helping the conspiracy after.]

3.07 VENUE

(1) Now, some of the events that you have heard about happened in other places. There is no requirement that the entire conspiracy take place here in the Western District of Kentucky. But for you to return a guilty verdict on the conspiracy charge, the government must convince you that either the agreement, or one of the [overt acts] [acts in furtherance] took place here in the Western District of Kentucky.

(2) Unlike all the other elements that I have described, this is just a fact that the government only has to prove by a preponderance of the evidence. This means the government only has to convince you that it is more likely than not that part of the conspiracy took place here.

(3) Remember that all the other elements I have described must be proved beyond a reasonable doubt.

7.02A DEFENDANT'S ELECTION NOT TO TESTIFY OR PRESENT EVIDENCE

(1) A defendant has an absolute right not to testify [or present evidence]. The fact that he did not testify [or present any evidence] cannot be considered by you in any way. Do not even discuss it in your deliberations.

(2) Remember that it is up to the government to prove the defendant guilty beyond a reasonable doubt. It is not up to the defendant to prove that he is innocent.

14.01 POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE (21 U.S.C. § 841(a)(1))

(1) The defendant is charged with the crime of possession of zolpidem tartrate with intent to distribute.  Zolpidem tartrate is a controlled substance. For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt: (A) First, the defendant knowingly [or intentionally] possessed zolpidem tartrate. (B) Second, the defendant intended to distribute zolpidem tartrate.

(2) Now I will give you more detailed instructions on some of these terms.

(A) [Insert applicable definition of possession from Instructions 2.10, 2.10A, and 2.11 here or as a separate instruction].

(B) To prove that the defendant "knowingly" possessed the zolpidem tartrate, the defendant did not have to know that the substance was zolpidem tartrate. It is enough that the defendant knew that it was some kind of controlled substance. Further, the defendant did not have to know how much zolpidem tartrate he possessed. It is enough that the defendant knew that he possessed some quantity of zolpidem tartrate.

(C) The phrase "intended to distribute" means the defendant intended to deliver or transfer a controlled substance sometime in the future. [The term distribute includes the actual, constructive, or attempted transfer of a controlled substance.] [To distribute a controlled substance, there need not be an exchange of money.]

[(3) In determining whether the defendant had the intent to distribute, you may consider all the facts and circumstances shown by the evidence, including the defendant's words and actions. Intent to distribute can be inferred from the possession of a large quantity of drugs, too large for personal use alone. You may also consider the estimated street value of the drugs, the purity of the drugs, the manner in which the drugs were packaged, the presence or absence of a large amount of cash, the presence or absence of weapons, and the presence or absence of equipment used for the sale of drugs. The law does not require you to draw such an inference, but you may draw it.]

(4) If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

## **EXHIBITS**

Pursuant to his constitutional right to present a defense and challenge the government's case in chief, the Defendant reserves the right to present any and all necessary rebuttal exhibits. The right to present a defense is an integral part of our criminal justice system. Originating in the English common law that "recognized that the accused has a right to present a defense at trial. Imwinkelried, *Exculpatory Evidence* (1996) at 1.

The United States Supreme Court has repeatedly held that the 14th Amendment's Due Process clause provides defendants with the right to rebut the prosecution's evidence. In *Ake v. Oklahoma*, (1985) 470 U.S. 68, the Court ruled that a defendant was entitled under due process to mitigate or rebut the state's evidence:

> This Court has long recognized when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness...

*Id* at 76.

Fundamental due process requires that a defendant be allowed to deny or explain evidence used against him. In *Gardner v. Florida*, (1977) 430 U.S. 349, the Court held that Daniel Gardner was "denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Id* at 362. Here the Defendant reserves the right to present rebuttal exhibits and evidence.

Respectfully submitted,

*s/ J. Clark Baird*
J. CLARK BAIRD
Counsel for Defendant
969 Barret Ave.
Louisville, KY 40204
PHONE: (502) 583-3388
FAX: (502) 583-3366
EMAIL: clark@jclarkbaird.com

CERTIFICATE OF SERVICE

I hereby certify that on July 8th, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to Assistant United States Attorney.

*s/ J. Clark Baird*
J. CLARK BAIRD