UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

AT LOUISVILLE


UNITED STATES OF AMERICA                                         PLAINTIFF


v.                                                      CRIMINAL NO. 3:17-CR-78-DJH

                                                                *Electronically Filed*


DHAVAL JERAMBHAI DHOLARIA                                        DEFENDANT


<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

COMES THE DEFENDANT, DHAVAL JERAMBHAI DHOLARIA, by and through

counsel, and hereby tenders his Sentencing Memorandum setting forth all factors that the Court

should consider in determining what type and length of sentence is sufficient, but not greater

than necessary, to comply with the statutory directives set forth in *18 U.S.C. § 3553(a)*. On

January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v.*

*Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000)* applies to

the Federal Sentencing Guidelines. *United States v. Booker, 125 S. Ct. 738, 756 (2005)*. Given

the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction

between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences

imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court.  Id. at

751.  Accordingly, reaffirming its holding in Apprendi, the Court concluded that

[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Id. at 756.*

Based on this conclusion, the Court further found those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, *18 U.S.C. § 3553(b)(1)* or which rely upon the Guidelines' mandatory nature, *18 U.S.C. § 3742(e)*, incompatible with its Sixth Amendment holding.  *Booker, 125 S. Ct. at 756.*  Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id. at 757.*

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guideline ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). *Booker, 125 S. Ct. at 757.*  Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in *18 U.S.C. § 3553(a).*

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)      to afford adequate deterrence to criminal conduct;

(C)      to protect the public from further crimes of the defendant; and

(D)      to provide the defendant with needed educational or vocational training, medical

care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing

courts to consider the following factors:

1)      "the nature and circumstances of the offense and the history and characteristics of

the defendant" (§ 3553(a)(1);

2)      "the kinds of sentences available" (§ 3553(a)(3);

3)      "the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct"  (§ 3553(a)(6); and

4)      "the need to provide restitution to any victims of the offense." (§ 3553(a)(7).

Other statutory sections also give the district court direction in sentencing.  Under *18

U.S.C.§ 3582*, imposition of a term of imprisonment is subject to the following limitation: in

determining whether and to what extent imprisonment is appropriate based on the Section

3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under *18 § U.S.C. 3661*, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  *See U.S.S.G. § 5H1; see also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age); citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004).*

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore.*"  United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. 2005) (Adelman, J.).*  As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." *See United States v. Jaber, 362 F.Supp.2d 365, 371 (D. Mass. 2005) (Gertner, J.); see also United States v.*

*Ameline, 400 F.3d 646, 655-56 (9th Cir. 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence", reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).*

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> *"Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range.  If the majority thought otherwise-if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed-its opinion would surely say so."  Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part).*

Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so.  The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.  And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).*

### Application of the Statutory Sentencing Factors to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

### The Nature and Circumstances of the Offense

This is a non-violent offense involving the distribution of misbranded drugs and some schedule IV drugs.   The Defendant was a re-shipper for an offshore Indian pharmacy that sold non-FDA approved drugs manufactured in other countries.

The Defendant did not receive any monetary profit from this offense and was not in charge of products, pricing, marketing, or sales.

### History and Characteristics of the Offender

Dhaval Jerambhai Dholaria (hereinafter "David"), has minimal prior experience with the criminal justice system.  David is not the typical criminal.  David understands the severity of his situation and the criminality of his conduct and he is deeply ashamed for setting this example for his family.

Collectively, the observations show that a period of probation would be just punishment for David. David's minimal criminal history assures the Court that there is no need to impose a custodial sentence to deter future criminal conduct.

**Family Ties and Responsibilities**

David was born in India.  He has been married for a year but has been in a relationship with his now wife for several years prior.  He has multiple step-children.  David's own family resides in India.

**Medical Condition**

David has no medical or physical issues.

**Mental and Emotional Health**

David has no mental or emotional health issues.

**Educational and Vocational Skills**

David is very well educated.  He has an engineering degree from India.  Here in the U.S. he obtained a Master of Science Degree in Technology Management.  He also took but did not finish an MBA program.  David has the ability to obtain and maintain lawful employment which will assist him in abiding by the law; David does not have the risk that so many other felons do who come out of our criminal justice system with no employable skills and who inevitably return to the life of crime to support themselves.  David has other options.

**Prior Criminal Record**

The Court should impose a sentence below the Guidelines because this will be David's first felony criminal conviction. Research performed by the United States Sentencing Commission has shown that defendants like David who have minimal prior criminal convictions are "the most empirically identifiable group of federal offenders who are least likely to offend." *United States Sentencing Commission, Recidivism and the "First Offender", May 2004.* First offenders recidivate less frequently in a way that's not taken into account by the sentencing guidelines. *See "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score", at 14-15, available at http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf; see also U.S. v. Cabrera, 567 F. Supp. 2d 271 (D. Mass. 2008) (significantly reducing a sentence based on the fact that defendants with zero criminal history points are less likely to recidivate than other defendants in criminal history category I).*

**The Kinds of Sentences Available**

There are no mandatory minimums applicable to this Defendant. In *Booker*, the Supreme Court severed and excised *18 U.S.C. § 3553(b),* the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *Booker, 125 S. Ct. at 756.* This renders the sentencing guidelines advisory. *Id.* Therefore the Court has the authority to impose any sentence it finds satisfies the statutory sentencing

requirements imposed by Congress.  The maximum term of imprisonment under the plea agreement is three years on Count 2, three years on Count 3 and five years on Count 6.

## The Sentencing Range Established by the Sentencing Commission

The range set forth in the Guidelines is 24 to 30 months.

## The Need To Avoid Unwarranted Disparities

Probating David would not create a disparity.  He has no co-defendant's in this case. Probation is a common sentence in cases involving misbranded drugs and in cases involving use of a fictitious name.

## Need To Provide Restitution To Victims

There is no restitution issue herein.

## The Need for the Sentence Imposed To Promote Certain Statutory Objectives

*To reflect the seriousness of the offense, promote respect for the law,*
*and provide just punishment for the offense*

This is a serious offense and this Honorable Court has a duty to impose a sentence that will promote respect for the law and provide just punishment. However, a non-custodial sentence would achieve a deep and profound respect for the law from David who has otherwise been a law-abiding citizen his entire life.

A sentence of probation would not unduly depreciate the seriousness of the offense. A sentence of probation would be a just punishment for this offense by this Defendant. This lack of prior criminal history means that a sentence of probation carries a more significant impact upon David then it would upon an individual with a prior history in the criminal justice system. This was the rationale behind the court's holding in *U.S. v. Baker* in upholding a sentencing reduction based on the finding that "a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned." *U.S. v. Baker, 445 F.3d 987, 992 (7th Cir. 2006)*. "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.*" U.S. v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).*

The mere fact that David is being convicted of a crime carries significant consequences. "Criminal conviction brings with it a host of sanctions and disqualifications that can place an unanticipated burden on individuals trying to re-enter society and lead lives as productive citizens. The impact of these "collateral consequences" is often discussed in the context of offender re-entry....[c]ollateral consequences tend to last indefinitely, long after an individual is fully rehabilitated." *"Beyond the Sentence - Understanding Collateral Consequences", Sarah B. Berson, National Institute for Justice, http://www.nij.gov/journals/272/pages/collateral-consequences.aspx.*

Finally, this conviction has a dramatic and harsh effect upon David's future employment. In November 2010 the Center for Economic and Policy Research released a study titled "Ex-offenders and the Labor Market," which found that a felony conviction or imprisonment significantly reduces the ability of ex-offenders to find jobs, costing the U.S. economy an estimated $57 to $65 billion annually in lost economic output. "Two prominent studies by Devah

Pager involved employment audits of men in Milwaukee and New York City. Both studies, funded by NIJ [National Institute for Justice], found that a criminal record reduces the likelihood of a job callback or offer by approximately 50 percent." *"In Search of a Job: Criminal Records as Barriers to Employment", Amy L. Solomon, National Institute of Justice, http://www.nij.gov/journals/270/pages/crim inal-records.aspx.*

These facts should be considered by the Court when imposing a sentence that is sufficient but not greater than necessary to fulfill the purposes of the Sentencing Reform Act. These facts show the Court that there is definitely punishment in a conviction, beyond just a term of incarceration. Indeed, the United States Supreme Court chided the lower courts for giving no weight to the substantial restriction of freedom involved in a term of supervised release or probation. *See United States v. Gall, 128 S.Ct. 586 (2007).* The Supreme Court said that "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall at 596 (citing United States v. Knights, 534 U.S. 112, 119, (2001)); see also Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) ("Inherent in the very nature of probation is that probationers `do not enjoy the absolute liberty to which every citizen is entitled").*

Probation would be a just punishment here because David faces deportation over this conviction.  The Court should take into consideration such a heavy collateral consequence which is so punitive in nature that it tips the scales in favor of probating David.

*To afford adequate deterrence to criminal conduct*

If the court were to consider the sentence of probation or home detention, these would be adequate to deter future criminal conduct by the Defendant.  The huge risk of deportation puts

the Defendant on even more thin ice and as such he cannot afford any further violations of the law.  The risk of deportation is an additional, collateral deterrent against criminal conduct for David.

### *To protect the public from further crimes of the Defendant*

The best way to predict future behavior of a defendant is to look at their past.  David has a minimal prior record.  As supported by both extensive empirical studies and case law, David is an extremely low risk to re-offend, based upon a variety of factors. A below-guideline sentence, such as probation, would be sufficient to deter David from any future criminal conduct, because such a sentence will have a huge impact on David's life.

### *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

David has an international education which obviates the need for educational treatment. He has always maintained employment so he does not need any vocational training.  As previously indicated, he has no medical issues that require medical care.

The most effective way to address these issues for David is under the supervision of probation and parole.

## **CONCLUSION**

In conclusion the Defendant respectfully moves this Court to impose a sentence of probation.  The Defendant maintains that this sentence is sufficient to satisfy the factors of the Fair Sentencing Act that the Court shall consider.  In the alternative, if the Court finds probation is not an appropriate sentence, then the Defendant would move for a sentence of home detention.

## CERTIFICATE OF SERVICE

I hereby certify that on October 2nd, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the Assistant U.S. Attorney.

Respectfully submitted,

J. CLARK BAIRD
Counsel for Defendant
969 Barret Ave.
Louisville, Kentucky  40204
Phone:  (502) 583-3388
Fax:  (502) 583-3366
E-mail:  Clark@jclarkbaird.com